IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JESSE BRISENO,<br>Plaintiff, | § § § | |
| v. | § | EP-11-CV-54-PRM |
| THE COUNTY OF EL PASO, TEXAS<br>and RICHARD WILES, individually,<br>Defendants. | § § § § § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant the County of El Paso, Texas's (the County) "Renewed Motion to Dismiss" (ECF No. 14)[1] [hereinafter the County's Motion], filed on March 14, 2011; Defendant Richard Wiles's (Wiles)[2] "Renewed Motion to Dismiss" (ECF No. 15) [hereinafter Wiles's Motion], filed on March 14, 2011; Plaintiff Jesse Briseno's (Plaintiff) "Response to the County of El Paso's Motion to Dismiss" (ECF No. 10) [hereinafter Response to the County], filed on March 1, 2011; Plaintiff's "Response to Richard Wiles'[s] Motion to Dismiss" (ECF No. 11) [hereinafter Response to Wiles], filed on March 1, 2011; and Defendants' "Reply in Support of their Motions to Dismiss" (ECF No. 24), filed on May 27, 2011 in the above-captioned cause.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this action on January 25, 2011, in County Court at Law Number Six in El Paso County, Texas. Notice of Removal, Feb. 8, 2011, ECF No. 1. On February 8, 2011,

---

[1] When referencing the record, the Court follows the suggested citation format found in THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION (Columbia Law Review Ass'n et al. eds., 19th ed. 2010).

[2] Collectively, Wiles and the County will be referred to as "Defendants" in this Order.

Defendants removed this case to federal court based upon the Court's federal question jurisdiction. *Id.* On February 18, 2011, Defendants each filed their original motions to dismiss. ECF Nos. 7-8. On March 1, 2011, Plaintiff, in addition to filing his Response to the County and Response to Wiles, also filed his "First Amended Complaint" (ECF No. 9) [hereinafter Amended Complaint]. Thereafter, Defendants each renewed their motions to dismiss.[3] Cnty.'s Mot. 1 n.1; Wiles's Mot. 1 n.1.

In his Amended Complaint, Plaintiff represents that he was employed as a detention officer by the County for the Sheriff's Office and worked at the downtown jail facility in El Paso, Texas. Am. Compl. ¶ 7. As part of his duties, he would receive and inventory the property of incoming inmates, provide appropriate receipts, and ensure that the property was properly stored. *Id.* ¶ 15.

On September 8, 2008, Plaintiff received and processed the property of an inmate, who subsequently complained that Plaintiff had stolen her property, including her wedding ring, high school class ring, and diamond earrings. *Id.* ¶¶ 16-22. The sheriff's office thereupon began an investigation which continued beyond January 1, 2009, the date that Wiles took office as El Paso County Sheriff. *Id.* ¶¶ 23-24.

Plaintiff contends that, on January 26, 2009, Defendants wrongfully terminated his employment. *Id.* ¶ 26. Shortly thereafter, Plaintiff claims that Wiles was responsible for generating a falsified investigative report. Plaintiff also claims that Wiles subsequently decided to order Plaintiff's arrest, "knowing that there was no probable cause to believe that a crime had

---

[3] The renewed motions to dismiss are nearly identical to the original motions, so the Court considers Plaintiff's Response to the County and Response to Wiles as equally applicable to the renewed motions to dismiss as they were to the original motions to dismiss.

been committed." *Id.* ¶¶ 27-33. Plaintiff further asserts that, on the following day, Wiles caused an employee of the County to swear out a false affidavit implicating Plaintiff in the theft of the property in question. *Id.* ¶¶ 35-36. Plaintiff contends that Defendants used the falsified affidavit and withheld exculpatory evidence when they sought to obtain an arrest warrant from a municipal judge. *Id.* ¶¶ 37-38. Plaintiff represents that the judge issued the warrant resulting in Plaintiff's arrest and incarceration. *Id.* ¶¶ 38-40. Plaintiff claims that, thereafter, Defendants included his picture on a website publishing recent arrests for serious crimes. *Id.* ¶ 41.

Plaintiff claims that the District Attorney's office initially declined to prosecute the case against him, but was pressured by Defendants into seeking an indictment for the alleged theft. *Id.* ¶¶ 42-43. However, Plaintiff contends that the charge was dropped when it was discovered that Wiles had destroyed or lost one of the surveillance videos that allegedly depicted the theft. *Id.* ¶¶ 44, 46.

Plaintiff asserts that his constitutional rights to due process and to be free from unreasonable search and seizure were violated and that he is entitled to redress under 42 U.S.C. § 1983. *Id.* ¶¶ 6, 59. He further argues that he is entitled to relief under Texas law based on the theories of false arrest and imprisonment, malicious prosecution, conspiracy, negligence, gross negligence, and defamation. *Id.* ¶ 61.

## II. LEGAL STANDARD

Defendants bring their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Cnty.'s Mot. ¶ 6; Wiles's Mot. ¶ 6. Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most

favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (internal quotation omitted). "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (but noting exceptions to this rule).

The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations omitted). A "formulaic recitation of the elements of a cause of action" or "facts [that] do not permit the court to infer more than the mere possibility of misconduct" fail to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a). *Id.* at 1949-50 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

### III. ANALYSIS

#### A. Federal Claims

Plaintiff brings federal claims against Defendants for violations of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 (2006). Am. Compl. ¶¶ 6, 56-59.

4

Wiles asserts the defense of qualified immunity as to the § 1983 claims against him. Wiles's Mot. ¶ 12. Accordingly, the Court must examine Wiles's liability in light of the doctrine of qualified immunity and the County's liability under the *Monell* doctrine.

### *1. Claims against Wiles*

A public official performing a discretionary function is entitled to qualified immunity in a civil action for damages, provided that his conduct does not "violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant invokes the qualified immunity defense, the plaintiff carries the burden of demonstrating its inapplicability. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). "Because qualified immunity constitutes an '*immunity from suit* rather than a mere defense to liability,' the defense is intended to give government officials a right not merely to avoid standing trial, but also avoid the burdens of 'such pre-trial matters as discovery.'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original)). To overcome a qualified immunity defense, a plaintiff must allege facts that, if proved, would demonstrate that the defendant violated clearly established statutory or constitutional rights. *Bullard v. City of Houston*, 95 F.3d 48 (5th Cir. 1996) (internal citations omitted). A plaintiff may not rest on general characterizations, but must speak to the factual particulars of the alleged actions, "at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants." *Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc).

The qualified immunity analysis has two prongs, the constitutional violation prong and

the clearly established prong; if the plaintiff fails on either prong, qualified immunity shields the defendant. *Pearson v. Callahan*, 555 U.S. 223, 236-237 (2009) (partially overturning *Saucier v. Katz*, 533 U.S. 194, 201 (2001) and explaining that a sequential analysis of the prongs is no longer required). Accordingly, if the plaintiff fails to establish a constitutional violation or fails to establish that the constitutional right was clearly established at the time that the alleged challenged conduct occurred, the claim is barred by qualified immunity.

    *a.    Constitutional Violation*

A court should examine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. Here, Plaintiff alleges violations of the Fourth and Fourteenth Amendments.[4]

    *i.    Wrongful Termination*

To state a Fourteenth Amendment due process claim under § 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). The entirety of Plaintiff's allegation is: "Specifically, [Defendants] have deprived [Plaintiff] of his right to due process, secured to him by the Fourteenth Amendment to the Constitution of the United States of America." Am. Compl. ¶ 58. Since Plaintiff fails to specify which interest is

---

[4] Plaintiff generally alleges that Defendants deprived him of "his right to due process, secured by the Fourteenth Amendment," and his "right to be free from "unlawful search and seizure, secured by the Fourteenth Amendment," Am. Compl. ¶¶ 58-59, without specifying what property interest was deprived of due process or what specific search and seizure violated his rights.

violated, the Court assumes that Plaintiff alleges a claim of wrongful termination.[5]

To enjoy a property interest in employment, an employee must "have a legitimate claim of entitlement" created and defined "by existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). In Texas, there exists a presumption that employment is at-will, unless that relationship has been expressly altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated. *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003) (citations omitted). "[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).

Here, Plaintiff claims that he was a detention officer for the El Paso County Sheriff's Office when the events in question transpired. Am. Compl. ¶ 7. However, nowhere in Plaintiff's Amended Complaint does he allege a property interest in his employment. Plaintiff solely alleges that the Defendants "wrongfully terminated [his] employment" and that they "presented false, distorted and perjurious testimony to official bodies in order to bring about . . . the termination of Plaintiff's employment." *Id.* ¶¶ 26, 47. Plaintiff does not substantiate these allegations nor does he point to any ordinance, official policy, state or local law, contract, or other enforceable agreement to support his claim of entitlement to his employment. Therefore, his pleadings fail adequately to state a due process claim for wrongful termination. *See Blackburn v. City of Marshall*, 42 F.3d 925, 940 (5th Cir. 1995) ("Because [plaintiff] does not allege that his property interest . . . stems from a state statute or regulatory scheme, a contract, or

---

[5] *See supra* note 4.

7

any other independent source, we find that [plaintiff] has failed to allege a property interest protected by the Due Process Clause of the Fourteenth Amendment.").

### ii. False Arrest

Plaintiff next alleges that Defendants violated his Fourth Amendment right to be free from false arrest.[6] The Fourth Amendment requires that an officer have probable cause to effect an arrest. Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (citation and internal quotation marks omitted). A police officer is entitled to qualified immunity for an arrest if a reasonable person in the officer's position could have believed that he had probable cause to arrest.[7] *Id.*

---

[6] It is not clear from his Amended Complaint whether Plaintiff intends to pursue a federal claim for malicious prosecution. The words "malicious prosecution" do not appear under his heading of "Federal Causes of Action." Am. Compl. ¶¶ 56-59. Regardless, the Court notes that both parties appear to believe that Plaintiff intends to assert such a claim in his Amended Complaint. Resp. to Wiles ¶ 4; Resp. to Cnty. ¶ 4; Wiles's Mot. ¶ 4; Cnty.'s Mot. ¶ 4. If that is the case, Plaintiff's § 1983 claim for malicious prosecution is also dismissed. The Fifth Circuit does not recognize a "freestanding constitutional right to be free from malicious prosecution." *Castellano v. Fragozo*, 352 F.3d 939, 953-54 (5th Cir. 2003) (en banc).
> Instead, it must be shown that the officials violated specific constitutional rights in connection with a "malicious prosecution." For example, "the initiation of criminal charges without probable cause may set in force events that run afoul of the ... Fourth Amendment if the accused is seized and arrested ... or other constitutionally secured rights if a case is further pursued." However, these "are not claims for malicious prosecution."

*Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (quoting *Castellano*, 352 F.3d at 953-54).

[7] Additionally, a grand jury indictment will generally establish probable cause that a crime was committed and that an arrest is justified. *Giordenello v. United States*, 357 U.S. 480, 487 (1958) ("A warrant of arrest can be based upon an indictment because the grand jury's determination that probable cause existed for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person so charged."); *Campbell v. City*

However, where an officer deliberately supplies misleading or false information in order to secure an indictment, the officer is not shielded from liability. *See Murray*, 405 F.3d at 293 ("[A]n official who provides *accurate* information to a neutral intermediary ... cannot 'cause' a subsequent [constitutional] violation." (emphasis added)). Truthfulness in obtaining an indictment is a clearly established principle of constitutional law. *See id.* at 293; *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004) (noting that a claim against an officer may be maintained if it is shown that "the deliberations of the intermediary were in some way tainted by the actions of the defendants" (quoting *Taylor v Gregg*, 36 F.3d 453, 457 (5th Cir. 1994))).

Plaintiff alleges that he was indicted and arrested based upon "a false complaint affidavit" that the judge relied upon when issuing the arrest warrant for Plaintiff. Am. Compl. ¶¶ 35, 38. Plaintiff explains that Wiles, "*acting through* a detective under his command[,] falsified an investigative report" and "*caused* an employee ... to knowingly swear out a false complaint affidavit." Am. Compl. ¶¶ 27, 35 (emphasis added). Plaintiff then purports to quote from the affidavit and enumerates the three alleged falsehoods contained therein.[8] *Id.* ¶¶ 35-36.

---

*of San Antonio,* 43 F.3d 973, 976 (5th Cir.1995) (citing *Giordenello*, 357 U.S. at 487) (noting that an arrest warrant may be based on a grand jury indictment which establishes probable cause).

[8] Plaintiff states:

> Thereafter, on or about February 11, 2009, Defendant Wiles, maliciously and without reasonable or probable cause therefore, caused an employee and agent of the Defendants, acting in the Defendants' interest, to knowingly swear out a false complaint affidavit. Specifically, the affidavit alleged that "AFFIANT has a video from the booking area that shows the booking process of the complainant by the DEFENDANT. The brown paper bag on his right hand and tilted it so that a clear plastic bag fell onto his left hand. [sic] The inside the clear plastic bag appeared something yellow (possibly the jewelry). [sic] The DEFENDANT appears to be by himself ..."

Plaintiff pleads enough factual detail with regard to the alleged falsehoods. Although he omitted the affiant's name, he apparently quoted from the affidavit and pointed to specific statements that he claimed were false.

Yet, the Court is not satisfied that Plaintiff has sufficiently pled facts to support his assertion that Defendant Wiles "caused" his agent to falsify the affidavit. Plaintiff must offer factual allegations, which if true, would actually demonstrate that Defendant Wiles caused the affiant to lie. *See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) (requiring "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury"). "Caused," the term used by Plaintiff in his Amended Complaint, is broad and subject to too many variations, not all of which would necessarily be actionable.

In some cases factual information that is required to support a claim may be "peculiarly within the knowledge of defendants." *Schultea*, 47 F.3d at 1432. A plaintiff could hardly be expected to plead such facts and could be entitled to limited discovery on the specific issue as it relates to qualified immunity. *Id.* In such a case, the Court's local rules provide that a plaintiff has fourteen[9] days from the date that a motion to dismiss asserting qualified immunity is filed to

---

> The falsehoods in the aforementioned affidavit were: (a) that the clear plastic bag fell onto the Plaintiff's left hand; (b) that there appeared to be something yellow inside the clear plastic bag; and (c) that the Plaintiff appeared to be by himself. All of these falsehoods were made intentionally, with the purpose of inducing a municipal judge to find probable cause that a crime had been committed and to issue a warrant for the Plaintiff's arrest.

Am. Compl. ¶¶ 35-36 (the text, including bracketed portions, has not been altered by the Court).

[9] Local R. CV-12 (providing eleven days from service of a motion to respond); FED. R. CIV. P. 6(d) (extending by three days the time to act "after service and service is made in under Rule 5(b)(2)(C), (D), (E), or (F)") (including electronic service).

file the plaintiff's response and "specify what, if any, discovery is necessary to determine the issue(s) of qualified . . . immunity and the time period necessary for the specific discovery." Local R. CV-12.

Here, Plaintiff responded within the allotted time but did not request discovery. Resp. to Cnty.; Resp. to Wiles [collectively, Response]. Instead, and for curious reasons unknown to the Court, Plaintiff styled the first five paragraphs of his Response as though he were answering a complaint, denying and admitting certain paragraphs of the County's Motion and Wiles's Motion. Resp. ¶¶ 1-5. The remainder of the Response attempts to persuade the Court to deny the County's Motion and Wiles's Motion, but does not request leave of Court to conduct discovery pursuant to Local Rule CV-12, nor does it address the deficiencies described above.

Even if the circumstances regarding Wiles's role in causing false documents to issue are not peculiarly within the knowledge of Defendants, and Plaintiff is aware of those circumstances, he has already been afforded opportunities to set forth those facts in pleadings before the Court. Under different circumstances, the Court could order a *Schultea* reply[10] requiring Plaintiff to address the issue of Wiles's alleged role in *causing* a subordinate to issue a false affidavit and investigative report. However, such an order would be superfluous given Plaintiff's decision to file his Amended Complaint in order to address Wiles's assertion of qualified immunity.

Accordingly, the Court finds that Plaintiff has failed to meet his burden and plead facts sufficient to rebut Wiles's claim of qualified immunity. Given that Plaintiff has already amended his complaint to address the qualified immunity issues raised by Wiles, the Court will not afford

---

[10] A *Schultea* reply, pursuant to Federal Rule of Civil Procedure 7(a), is appropriate when a court finds that a plaintiff has failed to plead sufficient detail in his complaint to address the affirmative defense of qualified immunity raised by a defendant. *Schultea*, 47 F.3d at 1433.

11

him another opportunity to do so and will dismiss his § 1983 claims against Wiles.

   2.   *The County's Liability Under* Monell

While a municipality may be held liable pursuant to § 1983 for the acts of its employees, it may not be held liable pursuant to § 1983 based upon the theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). For a municipality to be held liable for the constitutional violations of its employees, "those violations must result directly from a municipal custom or policy." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010). Accordingly the Fifth Circuit has established a three-prong test whereby "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

The first prong, demonstrating an official policy, can take several forms. For one, a plaintiff may show "a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). A plaintiff may also "demonstrate a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* at 169 (quoting *Webster*, 735 F.2d at 841). In "extremely narrow circumstances," a plaintiff may use the "single incident exception" to establish liability. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). In such exceptional circumstances, "a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton*, 541 F.3d at 549; *see also Zarnow*, 614 F.3d at 169 (finding no

pattern of conduct required if a policymaker engages in a single unconstitutional action).

    *a.* *Single Incident Exception*

Despite Plaintiff's allegation that Wiles is a policymaker,[11] Plaintiff fails to adequately plead a claim under the single incident exception. First, Plaintiff asserts that he was arrested without probable cause because Wiles, through an agent, falsified an investigative report, falsified an affidavit used to obtain a warrant, and concealed exculpatory facts in order to obtain an arrest warrant. Am. Compl. ¶¶ 27, 36, 37, 48. As discussed above,[12] such actions would violate constitutional protections because, if true, those actions directly led to his arrest without probable cause. However, Plaintiff failed to adequately plead the third prong, requiring Plaintiff to demonstrate that Wiles was the "moving force" behind his alleged constitutional injury.

Plaintiff's failure regarding municipal liability is similar to that described in the Court's discussion of qualified immunity. Again, Plaintiff merely asserts that Wiles, "*acting through* a detective under his command[,] falsified an investigative report" and "*caused* an employee . . . to knowingly swear out a false complaint affidavit." Am. Compl. ¶¶ 27, 35 (emphasis added). The specific manner in which Wiles acted, or what action he undertook to cause his subordinates to engage in the alleged improper behavior, is entirely unknown to the Court.

The "moving force" prong represents a "heightened standard of causation in order to hold a municipality liable under § 1983." *Valle*, 613 F.3d at 546. Simple but-for type causation is

---

[11] As a Texas sheriff, Wiles is a final policymaker under the law. *Bolton v. City of Dallas*, 541 F.3d 545, 550 n.4 (5th Cir. 2008) ("Texas sheriffs are policymakers as a direct result of state statute; their constitutional violations result in county liability even if contrary to other state law or policy.").

[12] *Supra* III.A.1.a.ii discussing *Shields*, 389 F.3d at 150, and related cases.

inadequate.[13] *Id.* Here, Plaintiff's Amended Complaint is deficient insofar as it only alleges that Wiles caused others to make false statements that ultimately led to his arrest. Plaintiff's more-than-adequate details as to the contents of the false statements are, standing alone, insufficient to mask the less-than-adequate and conclusory assertions that Wiles caused the falsities to issue.

### b. Ratification Theory

Plaintiff also fails to adequately plead facts to support his *Monell* claims under the so-called "ratification theory."

Plaintiff asserts that "the abuse and violation of constitutional rights to which Plaintiff was subject was consistent with an institutionalized practice of the El Paso County Sheriff's Office, which was known to and ratified by the Defendants Richard Wiles and County of El Paso, Texas." Am. Compl. ¶ 52. "The theory of ratification, however, has been limited to

---

[13] For example, where a policymaker "commanded" or "told" deputy sheriffs to "go in [to a locked portion of an office] and get" witnesses, in violation of the witnesses's Fourth Amendment rights, the municipality can be held liable based upon the single incident exception. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 474, 485 (1986). In such situation, no "question of fault or causation" can arise because the policymaker "specifically directed the action resulting in the deprivation of petitioner's rights." *Board of Cnty. Comm'rs of Bryan Cnty., Ok. v. Brown*, 520 U.S. 397, 407 (1997) [hereinafter *Bryan County*] (discussing *Pembaur*). In the present action, Plaintiff has not alleged that Wiles ordered, commanded, or told subordinates to falsify the investigative report or affidavit. Rather, he has only alleged that Wiles caused those falsified documents to issue, without specifically describing Wiles's role.

The Court is mindful, that in the broadest sense, as head of the sheriff's office, the sheriff could be considered to have "caused" any or all of the injuries that result from the actions of the sheriff's deputies—after all, the "buck stops" with the head of the office. However, such a theory is no more than one of *respondeat superior* liability, which the *Monell* doctrine forbids. Accordingly, courts must be careful to find an adequate link between a policymaker's decision and the particular injury alleged. *See id.* ("Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense. . . . To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."). In this case, Plaintiff has done nothing more than allege a link between Wiles and the injury.

extreme factual situations." *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (citations and quotation omitted). "Therefore, unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *Id.* (citations omitted). Far from pleading the extreme factual situations in which a policymaker ratifies the misdeeds of a subordinate, Plaintiff has attempted to plead just the opposite. Instead of a ratification-type claim, he describes a situation whereby Wiles, the policymaker, allegedly caused his subordinates to engage in constitutional prohibited conduct. Accordingly, the Court concludes that Plaintiff's ratification claim must fail because the facts that he asserts are inconsistent with the theory of ratification and fail to allege a claim upon which relief can be granted.

    c.    *Failure to Train Theory*

Similarly, Plaintiff is deficient in his attempt to plead a failure-to-train claim. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (citing *Bryan Cnty.*, 520 U.S. at 409). While Plaintiff refers to falsified reports and other occasions in which warrants were obtained without probable cause, Am. Compl. ¶ 54, the only factual basis offered in support of his failure to train claim is the investigative report and affidavit, which he alleges were falsified in *his* case resulting in *his* arrest without probable cause. As stated throughout this opinion, conclusory allegations that a pattern of similar conduct exists, without more, are insufficient to state a claim. Therefore, the Court finds that Plaintiff has failed to state a *Monell* claim under the failure-to-

train theory.

### B. Supplemental State Law Claims

Having determined that Plaintiff failed to plead viable claims for liability under § 1983, the Court must now consider Plaintiff's supplemental state law claims. This cause was removed based solely on federal question jurisdiction stemming from Plaintiff's § 1983 claims. Notice of Removal ¶ 2. The Court's sole basis to consider Plaintiff's state law claims comes from its supplemental jurisdiction under § 1367. *See* 28 U.S.C. § 1367. Section 1367 provides that a court may decline to exercise supplemental jurisdiction when, as here, it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

Given Plaintiff's apparent wish to initiate and prosecute this cause in state court, the lack of potential prejudice to Defendants from defending themselves in a state court, the centrality of state-law issues of immunity, and the concern for the limited judicial resources of the federal courts in the El Paso Division of the Western District of Texas, the Court exercises its discretion and declines supplemental jurisdiction over the state law claims. *See Rhyne v. Henderson Cnty.*, 973 F.2d 386, 395 (5th Cir. 1992) (upholding a district court's decision not to exercise supplemental jurisdiction over Texas Tort Claims Act claims after the court dismissed the plaintiff's § 1983 municipal liability claims). Accordingly, the Court will remand the remaining state-law claims back to County Court at Law Number Six in El Paso County, Texas.

### V. CONCLUSION

Plaintiff's attempts to plead a § 1983 claim are deficient as to both Wiles and the County. Plaintiff has failed to assert a claim upon which relief can be granted because his Amended Complaint lacks sufficient factual detail describing Wiles's role in allegedly causing the constitutional violations of which he complains. Given the lack of a federal question and the

nature of the state law issues, the Court will remand the state law claims back to County Court at Law Number Six in El Paso County, Texas.

Accordingly, **IT IS ORDERED** that Defendant the County of El Paso, Texas's "Renewed Motion to Dismiss" (ECF No. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Richard Wiles's "Renewed Motion to Dismiss" (ECF No. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's **§ 1983 claims** against Defendants Richard Wiles and the County of El Paso, Texas are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the above-captioned cause is **REMANDED** to County Court at Law Number Six in El Paso County, Texas.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **CLOSE** this case.

**SIGNED** this **30th day of September, 2011.**

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE